```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK


UNITED STATES OF AMERICA      *    Case No. 21-MJ-0057(CLP)
                              *
                              *    Brooklyn, New York
                              *    January 19, 2021
    v.                        *
                              *
BRENDAN HUNT,                 *
                              *
            Defendant.        *
                              *
* * * * * * * * * * * * * * * *

         TRANSCRIPT OF CRIMINAL CAUSE FOR ARRAIGNMENT
           BEFORE THE HONORABLE RAMON E. REYES, JR.
                UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:           DAVID R. KESSLER, ESQ.
                              IAN RICHARDSON, ESQ.
                              FRANCISCO OLIVERA, ESQ.
                              Asst. United States Attorney
                              United States Attorney's Office
                              271 Cadman Plaza
                              Brooklyn, NY 11201



For the Defendant:            LETICIA OLIVERA, ESQ.
                              Federal Defenders of New York,
                                Inc.
                              One Pierrepont Plaza
                              Brooklyn, NY  11201
```

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

1       (Proceedings commenced.)

2             THE CLERK: Criminal cause for arraignment, 21-MJ-
3   57, United States vs. Brendan Hunt. Counsel state your
4   appearances, please, starting with the government.

5             MR. KESSLER: Good afternoon, Your Honor. David
6   Kessler, Ian Richardson and Francisco Navarro for the
7   government.

8             THE COURT: Good morning. Good afternoon. Excuse
9   me.

10            MS. OLIVERA: Good afternoon, Your Honor. Leticia
11  Olivera, Federal Defenders of New York, on behalf of Mr.
12  Hunt.

13            THE COURT: Good afternoon.

14            Mr. Hunt, you're here today because charges have
15  been filed against you in a criminal case.

16            The purpose of this proceeding is to make sure you
17  are aware of those charges and to make sure that you
18  understand your rights as a defendant in a criminal case and
19  to address the question of whether you should be held in jail
20  or released on bail pending your trial.

21            You have the right to remain silent. You do not
22  have to make a statement to anyone. If you start to make a
23  statement, you can stop at any time. If you've made
24  statements in the past, you are not required to make
25  statements in the future.

1          Any statements that you do make can and will be
2     used against you in your case, except for statements that you
3     make to your attorney.  Those are privileged.
4              Do you understand?
5              THE DEFENDANT:  Yep.
6              THE COURT:  You also have the right to be
7     represented by an attorney throughout your case.  If you
8     can't afford an attorney, the court will appoint one to
9     represent you.
10             In connection with that I've been given a financial
11    affidavit that has some information on it indicating that you
12    earn approximately $2,800 per month and you have $1,000 in a
13    checking account and you have expenses of approximately
14    $1,200 a month.  Is that correct?
15             THE DEFENDANT:  About that.
16             THE COURT:  Okay.  It doesn't have to be exact.
17             THE DEFENDANT:  Yeah.
18             THE DEFENDANT:  Based on the information I find
19    that Mr. Hunt is entitled to court-appointed counsel and I
20    will appoint Ms. Olivera and the Federal Defenders of New
21    York to represent him.
22             Mr. Hunt, a complaint -- a criminal complaint has
23    been filed against you charging you with knowingly and
24    intentionally threatening to murder a United States official
25    with intent to impede, intimidate and interfere with such

4

1  official while engaged the performance of official duties and
2  with intent to retaliate against such official on account of
3  the performance of the official duties in violation of Title
4  18 United States Code Section 115(a).
5             Have you received a copy of the complaint?
6             THE DEFENDANT:  Yes.
7             THE COURT:  You discussed the charges with your
8  attorney?
9             THE DEFENDANT:  Yes.
10            THE COURT:  Do you understand the charges?
11            THE DEFENDANT:  I'm aware of the charges.
12            THE COURT:   Not whether you agree with them but
13 did you just understand what the charges are?
14            THE DEFENDANT:  I understood that I'm being charged
15 for this, yeah.
16            THE COURT:  Okay.  Ms. Olivera, you've discussed
17 this with Mr. Hunt?
18            MS. OLIVERA:  I have, Your Honor.
19            THE COURT:  Are you satisfied that he understands
20 the charges and his rights?
21            MS. OLIVERA:  I am.
22            THE COURT:  Does Mr. Hunt want a preliminary
23 hearing?
24            MS. OLIVERA:  Your Honor, I've discussed with Mr.
25 Hunt his right to a preliminary hearing and he will be

1      waiving that right today.
2              THE COURT:  Okay.  What is the government's
3      position with respect to bail?
4              MR. KESSLER:  Your Honor, this is David Kessler.
5              The government agrees with Pretrial Services that
6      detention is appropriate in this case for the following
7      reasons.
8              This is an extremely serious crime.  The
9      allegations involve a chilling and (indiscernible) series of
10     calls for direct violence against members of Congress over a
11     month.  These include calls for firing squads and for people
12     to bring their guns to the inauguration tomorrow on January
13     20th.
14             This series culminated in a January 8th video
15     threatening the slaughter of U.S. senators and members of
16     Congress and the overthrow of the elected government by so-
17     called actual patriots, and the solicitation by the defendant
18     for a firearm so he could participate directly in the
19     slaughter.
20             These threats would be grave under any
21     circumstances, but they're even more so in the volatile
22     environment we find ourselves in today leading up to the
23     inauguration. Of course, the defendant faces a maximum
24     sentence of ten years in prison.
25             The weight of the evidence is overwhelming.  The

1  January 8th threat is on video showing the defendant, his
2  prior statements and call for violence are written. The
3  context of these threats is well known.  You know, the
4  history and characteristics of the defendant also weigh
5  against release.
6          I won't go too much into the Pretrial Services
7  report but there are items in here that raised even
8  additional concerns, including a statement by the defendant's
9  father, who I believe (indiscernible) surety.
10         And finally the risk of flight is (indiscernible)
11 given the length of prison the defendant faces and his
12 limited ties to the community.  He seems to be alienated from
13 most of his family, and the danger to the community, which is
14 acute (indiscernible) particularly in this current
15 environment.
16         So for all those reasons, as I said, the government
17 agrees with Pretrial Services (indiscernible) detention is
18 appropriate in this case.
19         THE COURT:  Ms. Olivera.
20         MS. OLIVERA:  Your Honor, there is no presumption
21 of detention based on the charges in the complaint.
22         That means that the government must provide clear
23 and convincing evidence that Mr. Hunt's danger -- that Mr.
24 Hunt's release would present a danger to the community and
25 there are no conditions that can reasonably guarantee the

1       safety of the community.
2               The government relies exclusively on the nature and
3       circumstances of the offense, which is insufficient as a
4       matter of law because this is not an offense that carries a
5       presumption of detention.
6               And even if you accept the government's argument
7       that the nature and circumstances of the offense weigh in
8       favor of detention, this factor cannot overcome the rest of
9       the 3142(g) factors that weigh in favor of release.
10              Mr. Hunt has no criminal history or history of
11      arrest whatsoever.  While there may be some indications of
12      past family issues, he's never been arrested in connection
13      with these issues and no orders of protection have been
14      issued against him to stay away from any members of his
15      family.
16              I strongly dispute that he has no ties to the
17      community.  This is someone that was born and raised in
18      Queens.  He's lived there his entire life.  At the time of
19      his arrest he was a long-term employee of the New York Court
20      System.  He has a stable residence and he has a strong
21      relationship with his father who is willing to sign a bond to
22      secure his release if necessary.
23              But going back to the nature and circumstances of
24      the offense without seeking to undermine the seriousness of
25      the allegations of the complaint there is no allegation here

1    Mr. Hunt has a history of use or ownership of weapons.  He
2    has no membership in a militia or a paramilitary group.  He
3    had no plan to travel to Washington, D.C. to purchase weapons
4    or to actually even come in contact with any federal
5    officials, much less do anything to cause them physical harm.
6            The allegations in the complaint do not suggest
7    anything other than a plan to make outlandish posts online
8    from inside his home.
9            Unfortunately, in this environment we know what it
10   looks like when members of the community present an actual
11   threat to federal officials.
12           There is no indication that Mr. Hunt has
13   participated in any of the recent events designed to threaten
14   members of Congress or other federal officials or overthrow
15   the government.  We unfortunately know what that looks like
16   and it's not this.
17           The government's position in favor of detention I
18   should also note is contrary to their agreement to release
19   somebody who was actually arrested based on their
20   participation in the raid on the capital.
21           In 21-MJ-0027 the government consented to the
22   release of an individual who traveled to D.C. and entered the
23   capital with a mob that was armed and threatened to harm
24   people inside the capital.
25           So if that person can be released on bond, there's

1 no reason why Mr. Hunt, who is only alleged to have taken
2 action inside of his home on his computer, cannot be released
3 on bond.
4 For all those reasons we ask the court to order
5 that Mr. Hunt be released.
6 THE COURT: Mr. Kessler.
7 MR. KESSLER: One moment, Your Honor.
8 So a couple of responses. The first is just
9 because 18 USC 115 doesn't carry a presumption of detention
10 doesn't mean that in this particular case detention is not
11 appropriate. I mean, the government is relying on the
12 defendant's own videotaped podcast words calling for the
13 slaughter of members of Congress and volunteering to
14 participate.
15 The fact that there's no (indiscernible) that he's
16 a member of a militia and that he's a lone wolf instead is
17 neither here nor there for the threats.
18 You know, secondly, the government is not relying
19 solely on the nature and circumstances of the offense,
20 although they'll be sufficient in this case, the limited ties
21 to the community are clear.
22 The only person who has stepped forward as a surety
23 in this matter is the defendant's father, not even the rest
24 of his family. There's no one else being offered as a
25 surety. There's no one else in the picture.

             In addition, there are concerns about the
defendant's mental health which are set forth in the Pretrial
Services report.

             And finally, although I'm not -- I don't have the
case in front of me, the defense counsel raised, you know,
going to the capital on January 6th is not the same thing as
broadcasting a call to murder members of Congress and
repeatedly encouraging the members -- the murder of members
of Congress.  That's not a case that's comparable here.

             So on these facts, on these circumstances, given
the defendant's own videotaped and written words and the
other factors I've reviewed, detention is appropriate.
Although this is not a presumption case detention is
appropriate.

             In light of the nature and circumstances of the
offense charged, which is very serious, the weight of the
evidence against Mr. Hunt, which is strong, his history and
characteristics, suspicion of mental health issues, family
ties that are, according to the Pretrial Services Report,
tenuous at best, some history of drug use and the nature and
seriousness of the danger to the community, in particular the
legislative community and elected officials, and direct calls
for others to cause them physical harm, I find that detention
is appropriate.

             There are no conditions or combinations of

11

1  conditions that could assure Mr. Hunt's presence to face the
2  charges and alleviate the danger to the community.
3  So I'm going to sign a permanent order of detention
4  with leave to (indiscernible) a permanent order of detention.
5  Is there anything else?
6  MS. OLIVERA: Yes, Your Honor. I would ask the
7  court to issue a medical order that the MDC provide Mr. Hunt
8  with any mental health treatment that they deem necessary.
9  THE COURT: I will send a medical memo to the
10 facility to that effect. Unless there's anything else, we're
11 adjourned.
12 MR. KESSLER: Thank you.
13 (Proceedings concluded.)
14 I, CHRISTINE FIORE, Certified Electronic Reporter and
15 Transcriber, certify that the foregoing is a correct
16 transcript from the official electronic sound recording of
17 the proceedings in the above-entitled matter.
18
19 *Christine Fiore*
20 _____     January 20, 2021
21     Christine Fiore, CERT
22
23
24